IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In the Matter of the Arbitration Between | : |
| | : |
| CENTURY SURETY COMPANY, | : |
| | : Case No. 2:05-cv-286 |
| Claimant/Plaintiff, | : |
| | : Judge Marbley |
| v. | : |
| | : Magistrate Judge Abel |
| JOHN HANCOCK LIFE INSURANCE COMPANY f/k/a JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, | : |
| | : |
| Respondent/Defendant. | : |

**<u>ORDER</u>**

This matter is before the Magistrate Judge on Plaintiff/Claimant Century Surety Company's May 26, 2005 motion to vacate the Court's order of impoundment sealing exhibits and request for an order that all supporting exhibits not be filed under seal (doc. 14), Defendant/Respondent John Hancock Life Insurance Company's May 9, 2005 notice to join in Century Surety's March 3, 2005 motion for an order of impoundment (doc. 11), and Century Surety's July 14, 2005 motion to strike John Hancock's memorandum of law in reply to Century Surety's opposition to John Hancock's motion to file exhibits under seal (doc. 25).

On March 28, 2005, this Court granted Century Surety Company's March 3, 2005 motion for an order impounding and sealing the filing of certain documents filed in this Court. Specifically, Century Surety requested that the exhibits filed in support of its motion to vacate the arbitration award be filed under seal. On May 9, 2005, John

1

Hancock joined in Century Surety's motion.  On May 26, Century Surety moved to vacate the order of impoundment and to have all of the exhibits unsealed.  Century Surety also opposes John Hancock's notice to join in the motion.  Century Surety argues that the Arbitration Panel exceeded its authority when it issued the Confidentiality Order during the arbitration process and keeping the arbitration information sealed violates public policy.

**I.  Facts.**

On March 25, 2005, Century Surety filed suit asking that this Court vacate the Final Award of the Arbitration Panel.  The underlying claims involve Century Surety's allegations that John Hancock agreed to reinsure Century Surety on the PRIME Account through certain agreements that John Hancock had entered into with Credit General.  Credit General went into liquidation, and Century Surety sought recovery from John Hancock on the two reinsurance agreements: the Quota Share Treaty and the Excess of Loss Treaty.  The Arbitration Panel found in favor of John Hancock and found that Century Surety and John Hancock were not parties to a valid enforceable contract.

As part of the arbitration process, the Panel, after considering John Hancock's arguments for confidentiality and Century Surety's against, issued a Confidentiality Order.  It states in pertinent part:

> will keep confidential, except as provided in Paragraph 2 below . . . all briefs, depositions and hearing transcripts generated in the course of the arbitration, documents created for arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "Arbitration Information") This Confidentiality Order will remain in effect even after conclusion of the arbitration proceedings.

> 2. Disclosure of Arbitration Information may be made: . . . (b) in connection with court proceedings relating to any aspect of the arbitration, including but not limited to motions to confirm, modify or vacate an arbitration award . . . . In connection with any disclosures pursuant to subparagraph (b), the parties agree, subject to court approval, that all submissions of Arbitration Information to a court shall be sealed.

**II. The Motion to Strike**.

Century Surety is asking this Court to strike John Hancock's July 8, 2005 motion entitled, "John Hancock's memorandum of law in reply to Century Surety's opposition to John Hancock's motion to file exhibits under seal" (doc. 24). Century Surety argues that John Hancock's filing was an improper and unauthorized sur-reply.

Local Rule 7.2(2) authorizes the filing of the following motions and accompanying memoranda in support: a motion; a response motion; and a reply motion. If either party seeks to file an additional motion or memorandum in support, it must be done "by leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(2). A review of the docket sheet shows that the following motions were filed regarding impoundment:

- Century Surety's March 25, 2005 motion to file under seal (doc. 3);

- John Hancock's May 9, 2005 notice to join in Century Surety's motion to file exhibits under seal (doc. 11);

- Century Surety's May 26, 2005 motion to vacate the order on motion to seal (doc. 14);

- John Hancock's June 17, 2005 response to Century Surety's motion to vacate the order on motion to seal (doc. 19);

- Century Surety's July 1, 2005 reply to the John Hancock's response on motion to vacate (doc. 21);

- John Hancock's July 8, 2005 reply to Century Surety's opposition to John Hancock's motion to file under seal (doc. 24);

- Century Surety's July 14, 2005 motion to strike John Hancock's

3

> July 8, 2005 reply (doc. 25); and

- John Hancock's July 15, 2005 response to Century Surety's motion to strike (doc. 26).

John Hancock argues that document 17 was a brief made in opposition to Century Surety's motion to vacate the order of impoundment, which it alleges it was entitled to file. Consequently, John Hancock states that document 24 was a properly filed reply brief on the issue to seal.

After a review of the docket sheet and reading the corresponding documents, I conclude that John Hancock improperly filed a reply brief opposing Century Surety's motion to vacate (doc. 24). Century Surety filed the motion to file exhibits under seal; John Hancock later joined in that motion. The Court granted Century Surety's motion, which Century Surety then moved to vacate. The remaining relevant filings all address whether or not the Court's order should be vacated and the propriety of filing under seal following an arbitration panel's decision. In John Hancock's July 8 motion, the first paragraph states that John Hancock filed the memorandum in reply to Century Surety's opposition to John Hancock's motion to file exhibits under seal and in further opposition to Century Surety's motion to vacate the Court's order on motion to file under seal, which is the same subject matter as John Hancock's June 17th filing. Consequently, John Hancock's filing was improper.

In John Hancock's response to Century Surety's motion to strike, it asks that if this Court were to find that document 24 was improperly filed then in the alternative, it requests this Court to grant it leave to file the July 8, 2005 reply memorandum *instanter*. It argues that it has good cause because in Century Surety's response motion, Century

4

Surety raised new arguments.

While John Hancock improperly filed the reply brief, this Court will **GRANT** its alternative motion for leave to file the reply *instanter* since document 24 discusses the effect of the Federal Arbitration Act ("FAA") on these matters; an issue not thoroughly discussed in its response motion.  Accordingly, Century Surety's July 14, 2005 motion to strike John Hancock's memorandum of law in reply to Century Surety's opposition to John Hancock's motion to file exhibits under seal (doc. 25) is **DENIED**.

### III. Should the Order to Seal be Vacated?

**A. Arguments.**

Century Surety argues that the exhibits filed with its motion to vacate the Arbitration Award should be unsealed and that John Hancock's request to seal should be denied because the Arbitration Panel's Confidentiality Order should yield to public policy considerations such as public access to trials and trial materials, the parties themselves never agreed to keep the information confidential, and the Panel did not have the authority to issue the Confidentiality Order.

John Hancock argues that Century Surety is making an untimely attempt to overturn the Confidentiality Order of the Panel, and that an order to vacate an award of the Arbitration Panel must be done pursuant to the FAA.  It also argues that confidentiality is a necessary and inherent part of the reinsurance arbitration process which fosters an atmosphere of open communication.

Century Surety responds by arguing that Section 12 of the FAA, which limits the time of a party to file a "motion to vacate, modify, or correct an award" to three months,

does not apply to the Confidentiality Order because it is not an award. *See* 9 U.S.C. § 12. Further, even if the FAA does apply, section 10(a)(4) allows an award to be vacated "where the arbitrators exceed their powers." 9 U.S.C. § 10(a)(4). It also argues that the fact that the parties did not agree to confidentiality is particularly important because an arbitration panel derives its only authority from the consent of the parties.

### B. Discussion.

"Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). Arbitrators draw their authority from the parties, who agree in advance to submit their disputes to arbitration. *Id.* Accordingly, the power of an arbitration panel is limited to those matters that the parties have agreed to have arbitrated. *See Id.* at 648-49. Because the arbitration panel gets its authority from the parties' contractual consent, "the parties are free to establish parameters and rules of the arbitration by contract, including the scope of the issues to be arbitrated." *Rhone-Poulenc, Inc. v. Gould Elec., Inc.*, 1998 WL 704420 * 2 (N.D. Cal. Oct. 7 1998). Federal policy favors arbitration. *Federated Dept. Stores v. J.V.B. Industries,* 894 F.2d 862, 866 (6th Cir. 1990). In an effort to remain consistent with this policy "courts have . . . been hesitant to find that the arbitrator exceeded his authority where the arbitration

agreement fails to affirmatively or otherwise clearly limit the arbitrator's authority." *Rhone-Poulenc, Inc.*, 1998 WL 704420 * 2. The court may conclude that a party has waived any defects that occur in the arbitration process, if the party continues in the arbitration without objecting to the defect. *Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis,* 1986 WL 13759 * 2 (N.D. Ill. Nov. 28, 1986).

Century Surety waived any objection to the Arbitration Panel's Confidentiality Order. The Confidentiality Order was issued in January 2003. Century Surety continued in the arbitration process despite the Panel's Order. After filing its motion to vacate the Arbitration Award in this Court on March 25, 2005, Century Surety filed a motion to seal its exhibits. It was not until May 26, 2005 that Century Surety decided to object to the Panel's Order. A separate issue is whether or not the exhibits should remain sealed in this case.

Century Surety argues that the exhibits should be unsealed and opposes John Hancock's motion to seal by arguing that public policy favors open access to courts and court materials. John Hancock argues that keeping the arbitration information sealed supports the federal policy favoring arbitration especially in the context of reinsurance disputes. The Supreme Court has stated that whether to allow the public access to judicial records is a decision within the sound discretion of the trial court. *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 599 (1978). The burden to seal a document is on the party seeking to have it sealed. *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

As already stated, there is a strong federal policy favoring arbitration. *Federated Dept. Stores,* 894 F.2d at 866. According to ARIAS-US, a not-for-profit corporation

which "promotes the improvement of the insurance and reinsurance arbitration process . . ., " arbitration in the reinsurance industry should remain confidential. ARIAS-U.S., Practical Guide, Ch. III, § 3.8 "Confidentiality," Comment C, available at http://www.arias-us.org/index.cfm?a=40 (last visited Aug. 17, 2005).

Century Surety argues that public policy prefers that court information be open to the public. In part, Century Surety relies on a statement from the case *Eagle v. Fred Martin Motor Co.*, 157 Ohio App. 3d 150, 176 (2004):

> Court proceedings, by being open to the public and the media, advance the purpose of remedial consumer statutes such as the CSPA. That is, public access to court proceedings helps society become aware of unfair business acts and practices, educating consumers and thereby discouraging such activities. Conversely, arbitration proceedings, which are usually private, prevent the public from discovery violative acts and practices.

The Ohio Court of Appeals found a conflict between the methods employed by arbitration for the speedy and confidential resolution of disputes and the remedial purpose of consumer protection statutes. *Id.* The current dispute is distinguishable because Century Surety's claims are contract claims that are unique to the parties. The claims do not allege that John Hancock engaged in any unfair business practices that may have affected a greater number of parties other than Century Surety.

Century Surety also relies on the case *Ting v. AT&T*, 319 F.3d 1126 (2003). This case is similar to *Eagle.* The claims being arbitrated were brought by California consumers against AT&T. The court was concerned that keeping the arbitration information confidential would favor the company over the individual. *Id.* at 1151-52. By keeping each arbitration claim of each individual confidential, AT&T would get the

benefit of precedent, knowledge, and experience with each claim, while the individual consumers would achieve no benefit from the confidential proceedings.  *Id.* at 1152.  This framework allowed the company to use the confidentiality provision to place itself in a far better legal position.  *Id.*

The concerns that the court had in *Ting* are not present in this case.  In *Ting*, like in *Eagle*, there were potentially a great deal of claimants who would have to individually arbitrate their claims.  By keeping the arbitration information confidential, the company would have the advantage of the knowledge it gained from each arbitration, yet deprive the opponents (individual consumers) of that knowledge.  In this case, both parties are companies and neither party has alleged that there are other similarly situated plaintiffs who would be harmed or benefitted by making the information public.

John Hancock submitted an article that asserts that "[c]onfidentiality is one of the most attractive qualities that ADR has to offer" because it encourages full and open communication between the parties.  Bruce E. Larson & Susan B. Hansen Ethics in ADR: Issues of confidentiality and neutrality, THE BRIEF, Fall, 1992 at 14.  Further, "[t]he motivation to participate in alternative dispute resolution [may be] lost when confidentiality is compromised."  Id. (citation omitted).

John Hancock wants the arbitration information submitted under seal and to remain under seal.  Accordingly, it has the burden of showing why the documents should be sealed.  In accordance with the policy favoring arbitration, John Hancock has shown that under these circumstances allowing public access to the arbitration information may discourage the use of the arbitration process.  In this case, there "is no related litigation," and no one has requested the information under seal.  *See In re Bell*

9

& *Beckwith*, 198 B.R. 265 (N.D. Ohio 1996) (considering factors that would impact the court's decision in whether to lift a protective order). Rather, the only identified interested parties are Century Surety and John Hancock, who each have full access to the arbitration information.

I recognize that the public has an interest in the business of the courts and that its interest generally extends to the pleadings in civil lawsuits. But here the parties agreed to the arbitration forum. This case is here only for the limited review permitted by the Federal Arbitration Act.

To the extent that the public may have an interest in the business practices of Century Surety and John Hancock regarding the reinsurance policy Century Surety maintains John Hancock entered, that interest can be satisfied by the parts of the case file not under seal. This Order is not sealed, and the Court need not necessarily seal any portion of its merits decision on Century Surety's motion to vacate the arbitration award and John Hancock's motion to confirm it. Indeed, the parties' merits briefs were not filed under seal.

**IV. Conclusion.**

Plaintiff/Claimant Century Surety Company's May 26, 2005 motion to vacate the Court's order of impoundment sealing exhibits and request for an order that all supporting exhibits not be filed under seal (doc. 14) is **DENIED**. Defendant/Respondent John Hancock Life Insurance Company's May 9, 2005 notice to join in Century Surety's March 3, 2005 motion for an order of impoundment (doc. 11) is **GRANTED**, and Century Surety's July 14, 2005 motion to strike John Hancock's memorandum of law in

10

reply to Century Surety's opposition to John Hancock's motion to file exhibits under seal (doc. 25) is **DENIED**. The parties are **DIRECTED** to file any documents or things arising from the arbitration process under **SEAL**.

Under the provisions of 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P., and Eastern Division Order No. 91-3, pt. F, 5, either party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge. The motion must specifically designate the Order, or part thereof, in question and the basis for any objection thereto. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

/s/ Mark R. Abel  
United States Magistrate Judge